*71 OPINION.
Lansdon :
Our first issue relates to the petitioner’s right to deduct $33,250 from its gross income for 1926, on the ground that it represents interest paid in that year upon its obligations. The respondent has denied this claim and held that the payment should be attributed to dividends on stock.
The record shows that the petitioner purchased the assets from the Phoenix Co. and, simultaneously therewith, agreed to purchase back the 7,500 shares of its preferred stock at the rate of $150,000 liar value per annum “ with accrued and unpaid dividends.” The offer made and accepted proposed that the petitioner would cause to be purchased at par, plus any accrued and unpaid dividends, $150,000 *72 par value per year of the stock. It will be seen that this offer contemplated future purchases with a formula by which the price paid should be fixed when made. This price was to include the par value of the stock with all accruals for dividends added. This fixing of future dates for execution of the resales precludes any theory of an existing obligation, or obligations, to pay before said dates, upon which interest could accrue in the interim.
The petitioner contends, however, that the parties intended to make provisions in their contract of sale of the Phoenix Co.’s assets to allow for interest on deferred payments on their purchase price, and that the increase in payments -over par was intended to represent such allowance. It therefore argues that, because of that intent, we should attempt to change the character of this capital outlay in order to give effect to the substance of the transaction.
Assuming that the intent of the selling parties was as contended for by the petitioner, that fact, in our opinion, does not change the character of this expenditure or affect the real substance of what the parties did. They saw fit to divorce completely the purchase and sale of the Phoenix Co.’s assets from the resale of the preferred stock. The first was immediate and conclusive as to all parties, while the latter was wholly executory and binding only on the petitioner. It agreed to buy back the preferred stock at the price fixed, but there was no corresponding commitment on the part of the Phoenix Co. or its stockholders to sell should they change their minds on any of the terms. Whatever the parties may have intended in the transaction, their contract wholly failed to create any debt against which the petitioner could accrue an interest charge during the intervening period from date of its execution to the date of the purchase, and we therefore hold that the respondent correctly rejected the deduction claimed on account of it in the period under review.
Petitioner next contends that it is entitled to deduct $238,460 from its gross income for 1926 as the value of its stock payment made to its president, Cornish, for services rendered and to end litigation and terminate its so-called five-year contract with him.
The record shows that the salary contract with Cornish authorized by petitioner’s directors on August 18, 1924, was never executed. Chairman Eice of that board says in his deposition that it was not signed because when they got ready to draw it up they “ split upon the proposition of when he (Cornish) was entitled to the five percent.”
Cornish actually served as petitioner’s president about one year and was paid in excess of $25,000 cash for that service. The stock payment later made was in compromise of Cornish’s suit and to get *73 a release from him and his crowd that would get rid of the receiver and give control to the group that was to refinance and rehabilitate its affairs.
In our opinion the stock expenditures here contended for were in the nature of capital outlays made in the reorganization or rehabilitation of petitioner’s business and not expenses incurred in the operation thereof. The record convinces us that Cornish was adequately paid in cash for any and all services ever performed for the petitioner before the receiver took over its management and the petitioner has failed to show any additional services he rendered to it after that time and for which the amount in controversy would be reasonable compensation. Deductions of the character here contended for, to be allowable, must be shown to be reasonable in amount and necessary to the prosecution of the business to which they are attributed, and this the petitioner has failed to show. Its claim for this deduction is therefore denied. Morris Moore’s Sons, Inc., 1 B.T.A. 906; Sharpsville Boiler 'Works Co., 3 B.T.A. 568; Unióla Real Estate Co., 3 B.T.A. 1113; Bailey Dental Co. of Iowa, 11 B.T.A. 860; and Golding & Hahn, 15 B.T.A. 499.

Decision will he entered imder Rule 50.